UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Colleen M. Kurth,

    Plaintiff,

v.                                                                              Case No.: 10-11973

City of Inkster, *et al.*                                          Honorable Sean F. Cox

    Defendants.
_____/

OPINION & ORDER DENYING DEFENDANTS'
MOTION FOR JUDGMENT AS A MATTER OF LAW

    Plaintiff Colleen M. Kurth filed this action against the City of Inkster and her police department supervisors, Paul Martin and Dennis Watkins, alleging that Defendants discriminated against her under the Michigan Elliott-Larsen Civil Rights Act ("ELCRA") and Title VII of the Federal Civil Rights Act ("Title VII") because of her gender; retaliated against her in violation of Title VII for exercising her civil rights; caused her intentional infliction of emotional distress; and engaged in a concert of action and civil conspiracy to terminate her. On July 11, 2011, the Honorable Nancy G. Edmunds granted in part and denied in part Defendants' motion for summary judgment, dismissing all of Plaintiff's claims except for her mixed-motive, gender discrimination claim. Trial in this case began on November 29, 2011. The matter is currently before the Court on Defendants' motion for judgment as a matter of law, pursuant to FED. R. CIV. P. 50. The parties have briefed the issues and the Court heard oral argument on November 30, 2011. For the reasons below, the Court shall DENY Defendants' motion.

1

BACKGROUND

I.  Factual Background:

On May 28, 2001, the City of Inkster Police Department ("the Department") hired Plaintiff as a probationary police officer. In September, 2004, the Department promoted her to detective, the first woman to hold that position. Sergeant Sean Adams and Sergeant Paul Martin were Plaintiff's immediate supervisors. From September, 2002 to July, 2008, Kevin Smith was the detective Lieutenant in charge of the detective bureau and Martin reported directly to Kevin Smith. In July, 2008, Kevin Smith left the Department and he was replaced by Lieutenant Jeffrey Smith. Lieutenant Jeffrey Smith reported directly to Defendant Dennis Watkins, who was the Deputy Chief.

On January 22, 2009, an incident took place that led to Plaintiff's termination and the instant case. The employees of the Detective Bureau, including Plaintiff and Martin, were preparing to conduct a raid to recover computers from an individual suspected of committing identity theft. Martin became aware that Plaintiff was wearing a red police jacket. According to Plaintiff, Martin approached Plaintiff and said that she was "not invited" on the raid. According to Defendants, Martin told her to put on a lightweight, black, police-issued jacket, rather than the red police jacket Plaintiff had been wearing. Other members of the raid team were wearing different colored jackets, but none were bright-colored jackets. Martin insists that he told Plaintiff to wear the standard-issue black jacket out of concern for her safety because the red jacket could have made Plaintiff an easily-visible target.

In response to the "red jacket incident," Lieutenant Jeffrey Smith requested that Sergeant Martin and Sergeant Adams prepare memoranda regarding the red jacket incident. Lieutenant

Smith also received an unsolicited letter from Plaintiff in which she discussed Martin's treatment of her, alleged on-going discrimination, and alleged that Martin created a hostile work environment. After investigating the incident, Smith submitted a memorandum to Deputy Chief Watkins, wherein he concluded that the Department should apply "progressive discipline" to Plaintiff. Smith found that Plaintiff violated Department rules by failing to cooperate during the raid and had committed insubordination by refusing Martin's order. The results of the investigation into Plaintiff's conduct were ultimately reviewed by Watkins, who recommended that the Department terminate Plaintiff's employment. Chief Gregory Gaskin agreed with Watkins's recommendation and, in March, 2009, the Department terminated Plaintiff's employment. The Human Resources Department also conducted an investigation into Plaintiff's allegations and found that they did not support a hostile work environment claim.

On July 23, 2009, following her termination, Plaintiff and the Department engaged in arbitration proceedings. The arbitrators recommended that the Department rehire Plaintiff after finding that Watkins's recommendation was based on an inaccurate disciplinary history. The arbitrators also found that there were mitigating factors, including the fact that Plaintiff had previously worn the same jacket on other raids and that there were other, more serious instances of insubordination that did not lead to termination. The arbitrators considered that Plaintiff was a long-term employee with a good professional record. In October, 2009, Plaintiff returned to work.

II.    Procedural Background:

Plaintiff filed this action on April 27, 2010, alleging a number of state and federal discrimination claims against Defendants. Defendants removed the action to this Court on May

3

14, 2010. (Doc. No. 1).

On July 11, 2011, Judge Edmunds granted in part, and denied in part, Defendants' motion for summary judgment. Judge Edmunds dismissed all of Plaintiff's claims except for her mixed-motive, gender-discrimination claim. Based upon previous evidence of discriminatory comments by Martin, and Watkins' alleged shared bias against Plaintiff, Judge Edmunds held that there is a material question of fact whether the decision to terminate Plaintiff's employment was, in part, motivated by her gender. (7/11/11 Opinion at 26-27).

The case was reassigned to this Court on October 7, 2011. (Doc. No. 19). Trial began on November 29, 2011. On November 30, 2011, at the close of Plaintiff's proofs, Defendants moved for judgment as a matter of law, pursuant to FED. R. CIV. P. 50.

On December 2, 2011, Plaintiff voluntarily dismissed any remaining claims brought pursuant to the ELCRA. (Doc. No. 46).

## LEGAL STANDARD

FED. R. CIV. P. 50 provides, in pertinent part:

    (a)    Judgment as a Matter of Law.

        (1)    In General. If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:

            (A)    resolve the issue against the party; and

            (B)    grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

        (2)    Motion. A motion for judgment as a matter of law

>  may be made at any time before the case is submitted to the jury. The motion must specify the judgment sought and the law and facts that entitle the movant to the judgment.

FED. R. CIV. P. 50.

"In entertaining a motion for judgment as a matter of law, the court is to review all evidence and draw all reasonable inferences in the light most favorable to the non-moving party, without making credibility determinations or weighing the evidence." *Jackson v. FedEx Corporate Services, Inc.*, 518 F.3d 388, 392 (6th Cir. 2008) (citations omitted). "In other words, the decision to grant judgment as a matter of law or to take the case away from the jury is appropriate whenever there is a complete absence of pleading or proof on an issue material to the cause of action or when no disputed issues of fact exist such that reasonable minds would not differ." *Jackson v. Quanex Corp.*, 191 F.3d 647, 657 (6th Cir. 1999) (citations and quotations omitted).

## ANALYSIS

Defendants contend that Plaintiff has failed to establish a prima facie case for a mixed-motive, gender discrimination claim. To prove a mixed-motive claim under Title VII, a plaintiff must show: (1) The defendant took an adverse employment action against the plaintiff; and (2) "race, color, religion, sex, or national origin was a motivating factor" for the defendant's adverse employment action. *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 400 (6th Cir. 2008). "[A]n unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was ***a motivating factor*** for any employment practice, even though other factors also motivated the practice." (42 U.S.C. § 2000e-2(m)).

I.  Plaintiff Presented Evidence that Martin's Actions Were Motivated, In-Part, By Discriminatory Animus and That Martin's Report Was a Proximate Cause of Plaintiff's

5

Termination.

There is no dispute that Plaintiff suffered an adverse employment action when her employment was terminated in March, 2009. Rather, Defendants contend that Plaintiff has failed to establish that sex was a motivating factor in her termination.

As an initial matter, the Court, in viewing the evidence in a light most favorable to Plaintiff, finds that Plaintiff has submitted evidence sufficient to establish that sex was a motivating factor in her termination. The Court heard the testimony of Kevin Smith, who was the Lieutenant in charge of the detective bureau and one of Plaintiff's supervisors from September, 2004 to July, 2008. The record establishes that Martin reported directly to Kevin Smith. Kevin Smith testified as to Martin's bias toward women, stating, "Paul [Martin] was not happy with women in police work, in general. He would make comments about it and when I told him that, you know, they were going to move Colleen Kurth under the detective bureau, he didn't like it at all." (Rough Transcript, 11/30/11). Additionally, Kevin Smith testified:

> [Martin] would say things like: a female police officer is worth a damn. If he got into a fight he wants testosterone not estrogen. They are trouble, you know. Only good for a couple of things. And, you know, something like he can clean is own house or do his own dishes or something like that.

(*Id.*). Kevin Smith also stated that "[Martin] was very obvious to everybody that he did not care for her." (*Id.*). Furthermore, Plaintiff testified, "In April of 2005, [Martin] told me that women should not be in police work. He never wants a woman backing him up." Plaintiff also stated:

> [W]hen I came to the detective bureau, he would constantly make reference to the fact that I wasn't wearing a tie, asked me constantly, everyday, 'where is your tie? Must be nice, you know, not to have to wear a tie to work.' And this went on for close to a year.

(*Id.*). Viewing the evidence in a light most favorable to the Plaintiff, these statements made by

Martin tend to show that Martin harbored a discriminatory bias toward female detectives. Thus, from the testimony provided by Kevin Smith and Plaintiff, the Court finds that a reasonable juror could infer that Martin's actions were motivated, in-part, by his discriminatory animus.

Defendants, however, contend that Plaintiff has failed to show discriminatory animus on the part of the ultimate decision makers – Chief Gaskin, Deputy Chief Watkins and/or Ann Capela, who is the City Manager for the City of Inkster. Both parties rely on the recent Supreme Court decision *Staub v. Proctor Hospital*, 131 S. Ct. 1186 (2011), to support their positions. In *Staub*, the Supreme Court discussed the applicability of the "cat's paw" theory in employment discrimination cases. Under a cat's paw theory of liability, a plaintiff seeks to hold his or her employer liable for the discriminatory animus of a supervisor who was not charged with making the ultimate, adverse employment decision. *Staub*, 131 S. Ct. at 1190.

The plaintiff in *Staub* brought employment discrimination claims against his employer under the Uniformed Services Employment and Reemployment Rights Act (USERRA), alleging that his immediate supervisor discriminated against him because he was a member of the United States Army Reserve. *Id*. at 1189. Specifically, the plaintiff alleged that his immediate supervisors took offense to his monthly commitments to the Army Reserves because they believed his commitments caused availability problems. *Id*. After receiving previous disciplinary action by his supervisors, and after an independent investigation by management, the plaintiff was ultimately fired by the vice-president on the advice of plaintiff's supervisors.

The evidence established that plaintiff's supervisors harbored discriminatory animus toward plaintiff. Testimony revealed that plaintiff's supervisors stated that plaintiff's military obligations were "'a b[u]nch of smoking and joking and [a] waste of taxpayers' money.'" *Id*.

7

The evidence also established that plaintiff's supervisor was "out to get" him. *Id*. The Seventh Circuit held that, because the undisputed evidence established that the vice-president was not wholly dependant on the advice of plaintiff's supervisors, the employer was entitled to judgment. *Id*. at 1190.

Comparing the plaintiff's case to employment discrimination cases under Title VII, the Supreme Court reversed the decision of the Seventh Circuit. The Court found:

> Animus and responsibility for the adverse action can both be attributed to the earlier agent (here, [plaintiff's] supervisors) if the adverse action is the intended consequence of that agent's discriminatory conduct. So long as the agent [for the employer] intends, for discriminatory reasons, that the adverse action occur, he has the scienter required to be liable under USERRA.

*Id*. at 1192. The Court further explained, "We do not think that the ultimate decisionmaker's exercise of judgment automatically renders the link to the supervisor's bias 'remote' or 'purely contingent.'" *Id*. The Court also stated:

> [T]he requirement that the biased supervisor's action be a causal factor of the ultimate employment action incorporates the traditional tort-law concept of proximate cause. Thus, if the employer's investigation results in an adverse action for reasons unrelated to the supervisor's original biased action . . . then the employer will not be liable. But the supervisor's biased report may remain a causal factor if the independent investigation takes it into account without determining that the adverse action was, apart from the supervisor's recommendation, entirely justified. We are aware of no principle in tort or agency law under which an employer's mere conduct of an independent investigation has a claim-preclusive effect. Nor do we think the independent investigation somehow relieves the employer of "fault." The employer is at fault because one of its agents committed an action based on discriminatory animus that was intended to cause, and did in fact cause, an adverse employment decision.

*Id*. at 1193 (internal citations omitted) (emphasis added).

Like the plaintiff in *Staub*, and viewing the evidence in a light most favorable to the Plaintiff, Plaintiff in this case has also provided evidence from which a reasonable juror may

8

infer that the adverse action was the intended consequence of Martin's discriminatory conduct. For example, Kevin Smith testified, "[Martin] had made comments to me about, you know, if he ever got the power that he, you know, would deal with her, once and for all." (*Id*.). Similarly, Detective Anthony Delgreco testified that Martin would often comment, "How can I mess with her today?" or "How can I write her up today?" (*Id*.).

In viewing the evidence in a light most favorable to the Plaintiff, Martin's report to Jeffrey Smith was at least partly motivated by discriminatory animus. Although evidence at trial revealed that Jeffrey Smith conducted an independent investigation of the red jacket incident, which he submitted to Deputy Chief Watkins and Chief Gaskin, Smith's report relied on a memo drafted by Martin. (Def's Ex. 4). Like the independent investigation in *Staub*, Jeffrey Smith's investigation and report to Deputy Chief Watkins does not shield the Department from liability. Pursuant to *Staub*, Martin's report can be considered a proximate cause of Plaintiff's termination, despite the fact that Martin was not the ultimate decision-maker.

II.     This Case is not Similar to *Grant v. Walgreen*.

While Defendants agree that an employer can be liable for the discriminatory animus of a supervisor who does not execute the actual adverse action, Defendants contend that this case is more like *Grant v. Walgreen*, 2011 WL 2079923 (E.D. Mich. 2011), where the court declined to apply *Staub* to a plaintiff's claim of discrimination by an immediate supervisor. In *Grant*, the plaintiff's supervisor made reports to upper-management that plaintiff was violating various store policies. After an independent investigation, upper-management terminated the plaintiff after the district manager issued a number of warnings to plaintiff. The plaintiff sued her former employer for age discrimination, alleging that her immediate supervisor's actions were

motivated by discriminatory animus.

The plaintiff in *Grant* provided evidence that her supervisor made comments that several employees "really couldn't do their job because of the[ir] age" and that "[i]t would have been so much better if [the store] had younger people." *Grant* at * 5.  The plaintiff further alleged that the supervisor treated her differently than the younger employees.  *Id*.  In granting the employer's motion for summary judgment, the court held that the plaintiff could not rely on the cat's paw theory of liability, because, unlike in *Staub*, the plaintiff did not establish the connection between the alleged age discrimination and the supervisor's reporting of plaintiff's policy violations.  *Id*. at *9.  The supervisor's comments did "not raise an issue that [the supervisor] targeted Plaintiff and used Plaintiff's age as a reason to terminate her."  *Id*. at *10.

*Grant*, however, can be distinguished from the instant case.  Unlike the supervisor in *Grant*, and similar to the supervisor in *Staub*, Martin made comments that a reasonable juror could interpret as targeting Plaintiff.  As stated above, Martin made comments to other detectives such as, "If I ever get the power, I would deal with her, once and for all," "How can I mess with her today?," and "How can I write her up today?"  Viewing these comments in conjunction with Martin's discriminatory comments about female detectives, and in a light most favorable to the Plaintiff, a reasonable juror could find that Martin's report to Jeffrey Smith was motivated by, and sufficiently linked to, Martin's discriminatory animus.

Accordingly, the Court finds that Plaintiff has established a prima facie case of mixed-motive, gender discrimination.

## CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED that Defendants' motion for

judgment as a matter of law (D.E. No. 39) is DENIED.

  IT IS SO ORDERED.

              S/Sean F. Cox
              SEAN F. COX
              UNITED STATES DISTRICT JUDGE

Dated: December 20, 2011

I hereby certify that a copy of the foregoing document was served upon counsel of record on December 20, 2011, by electronic and/or ordinary mail.

              S/Jennifer Hernandez
              Case Manager